Scott M. Petersen, A7599
David N. Kelley, A9137
FABIAN & CLENDENIN,
 A Professional Corporation
Twelfth Floor
215 South State Street
P.O. Box 510210
Salt Lake City, Utah  84151
Telephone:  (801) 531-8900

Attorneys for New York Life Insurance Company and New York Life Insurance and Annuity Corporation

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Ralph O. Stalsberg, an individual, Lonnie R. Stalsberg, As Trustee For The Ralph O. Stalsberg Irrevocable Trust I dtd. 9/28/2004, <br><br>Plaintiffs,<br><br>vs.<br><br>New York Life Insurance Company and New York Life Insurance And Annuity Corporation,<br><br>Defendants. | **ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF AND RESCISSION**<br><br>Case No. 2:07-cv-29 BJ<br><br>Judge Bruce Jenkins |

Now comes New York Life Insurance and Annuity Corporation ("NYLIAC") and New York Life Insurance Company ("NYL") (collectively, "New York Life"), respectfully answers the Complaint of Ralph O. Stalsberg, as individual, and Lonnie Stalsberg, as Trustee for the Ralph O. Stalsberg Irrevocable Trust I dtd 9/28/2004 ("the Stalsberg Trust") (collectively,

"Stalsbergs"), as follows:

## INTRODUCTION

1.      New York Life denies the allegations in paragraph 1 of the Complaint. Specifically, New York Life denies that it committed an unlawful and bad faith cancellation of the life insurance policy insuring the life of Ralph O. Stalsberg. New York Life admits that Ralph O. Stalsberg applied for and was issued a life insurance policy by New York Life, policy # 56 734 134 (the "Policy") on or about January 21, 2005, in the face amount of $3,570,000, insuring the life of Ralph O. Stalsberg, who was 82 years old at the date of issue. New York Life denies that Lonnie Stalsberg, as trustee or otherwise, was at all times the true legal and beneficial owner of the Policy. New York Life also denies that Ralph Stalsberg and Lonnie Stalsberg made no misrepresentations on the application for the Policy or otherwise in connection with the Policy.

2.      New York Life denies the allegation in paragraph 2 of the Complaint that New York Life had no reasonable or valid basis to rescind the Policy. New York Life denies that the Stalsbergs complied with each and every term of the Policy, and alleges that the Stalsbergs failed to comply with the insurable interest provision set forth in Utah's governing insurance law, Utah Code Ann. § 31A--21-104(1)(b). Based on this failure by the Stalsbergs, New York Life lawfully rescinded the Policy on January 8, 2007.

## THE PARTIES

3.      New York Life admits the allegation in paragraph 3 of the Complaint.

4. New York Life admits the allegation in paragraph 4 of the Complaint.

5. New York Life admits the allegation in paragraph 5 of the Complaint, except that New York Life denies that NYL directly sells insurance policies.

6. New York Life admits the allegation in paragraph 6 of the Complaint.

### JURISDICTION AND VENUE

7. New York Life admits the allegation in paragraph 7 of the Complaint.

8. New York Life admits the allegation in paragraph 8 of the Complaint.

### RALPH O. STALSBERG'S ALLEGED ESTATE PLAN

9. New York Life does not have sufficient information to admit or deny the allegations in paragraph 9 of the Complaint.

10. New York Life admits that individuals may acquire life insurance to provide for their heirs, and admits that life insurance policies may be acquired and held through irrevocable trusts in an effort to assist in estate tax planning. New York Life is without sufficient information to admit or deny the remaining allegations in paragraph 10 of the Complaint.

11. New York Life is without sufficient information to admit or deny the allegations in paragraph 11 of the Complaint.

### THE STALSBERGS' ALLEGATIONS REGARDING THE ACQUISITION AND FINANCING OF THE POLICY

12. New York Life denies the allegation in paragraph 12 that Lonnie Stalsberg was attempting to advance estate-planning objectives in applying for the Policy. New York Life admits that on or around January 24, 2005, the Policy was issued to Lonnie Stalsberg as trustee

4811-2214-7585

for the Stalsberg Trust, and that the Policy is a universal life policy with an initial base face amount of $3,750,000. Regarding the remaining allegations in paragraph 12 of the Complaint, the relevant terms of the Policy are stated in the Policy, which speak for themselves.

13. New York Life denies the allegations of paragraph 13 of the Complaint.

14. New York Life is without sufficient information to admit or deny the allegations in paragraph 14 of the Complaint.

15. New York Life is without sufficient information to admit or deny the allegations of paragraph 15 of the Complaint, except that New York Life admits that policy owners sometimes borrow money to pay premiums on their policies, and states that the relevant terms of the Policy speak for themselves, as subject to governing law.

16. New York Life is without sufficient information to admit or deny what other lenders were willing to offer to the Stalsbergs, or the specific terms or understandings those lenders required. New York Life denies that the loan terms obtained by the Stalsbergs, including the 15.44% interest rate charged to the Stalsbergs, were more favorable than the loan terms that would have been available from New York Life once the Policy had generated a cash value against which amounts could be borrowed.

17. With respect to the allegations in paragraph 17 of the Complaint, New York Life refers the Court to the Note and Security Agreement attached to the Stalsbergs' Complaint.

18. New York Life is without sufficient information to admit or deny the allegations in paragraph 18 of the Complaint.

19.     New York Life denies the allegations of paragraph 19 of the Complaint, and denies that the Stalsberg Trust, or Lonnie Stalsberg as trustee, is and always has been the true legal and beneficial owner of the Policy.

20.     New York Life denies the allegations of paragraph 20 of the Complaint as stated. New York Life acknowledges receipt of a change of ownership form naming LaSalle as the owner of the Policy.

21.     New York Life denies the allegations of paragraph 21 of the Complaint.

22.     New York Life denies the allegations in the first sentence of paragraph 22 of the Complaint, and is without sufficient information to admit or deny the remaining allegations.

23.     New York Life denies the allegations of the first sentence of paragraph 23 of the Complaint, and the remaining allegations consist of legal argument to which no response is required, or, to the extent a response is required, New York Life denies those allegations.

24.     New York Life denies the allegations in paragraph 24 of the Complaint.

### THE STALSBERGS' ALLEGATIONS REGARDING NEW YORK LIFE'S RESCISSION

25.     New York Life denies the allegations of paragraph 25 of the Complaint, except that it admits that on January 8, 2007, it communicated that it was rescinding the Policy.

26.     New York Life denies the allegations in paragraph 26 of the Complaint.

27.     New York Life denies the allegations in paragraph 27 of the Complaint as stated. New York Life admits that on or around January 11, 2007, Coventry contacted New York Life in an effort to persuade New York Life not to rescind the Policy.

      28.      New York Life denies the allegations of paragraph 28 of the Complaint.

      29.      New York Life denies the allegations of paragraph 29 of the Complaint.

      30.      New York Life denies the allegations of paragraph 30 of the Complaint, except that it admits that some policy owners allow their policies to lapse.

      31.      New York Life denies the allegations of paragraph 31 of the Complaint, except that it admits that on or around February 1, 2006, it sent a letter acknowledging that LaSalle had been recorded as the record owner of the Policy, and admits that New York Life rescinded the Policy through a letter sent on or around January 8, 2007.

      32.      New York Life denies the allegations of paragraph 32 of the Complaint.

### ANSWER TO COUNT I

      33.      New York Life incorporates and realleges its answers in paragraphs 1 through 32 as though fully set forth herein.

      34.      New York Life admits the allegation in paragraph 34.

      35.      New York Life admits that it rescinded the Policy and returned all premiums paid on the Policy, but denies the remaining allegations of paragraph 35 of the Complaint.

      36.      New York Life denies the allegations of paragraph 36 of the Complaint.

      37.      New York Life denies the allegations of paragraph 37 of the Complaint.

      38.      New York Life denies the allegations of paragraph 38 of the Complaint.

### ANSWER TO COUNT II

39. New York Life incorporates and realleges its answers in paragraphs 1 through 38 as though fully set forth herein.

40. New York Life admits the allegations of paragraph 40 of the Complaint.

41. New York Life denies the allegations of paragraph 41 of the Complaint.

42. New York Life denies the allegations of paragraph 42 of the Complaint.

43. New York Life denies the allegations of paragraph 43 of the Complaint.

44. New York Life denies the allegations of paragraph 44 of the Complaint.

45. New York Life denies the allegations of paragraph 45 of the Complaint.

## ANSWER TO COUNT III

46. New York Life incorporates and realleges its answers in paragraphs 1 through 45 as though fully set forth herein.

47. New York Life admits the allegations of paragraph 47 of the Complaint.

48. New York Life denies the allegations of paragraph 48 of the Complaint.

49. New York Life denies the allegations in paragraph 49 of the Complaint.

## ADDITIONAL DEFENSES

In addition to its foregoing answers to the specific allegations made by the Stalsbergs, New York Life sets forth the following additional defenses:

1. The Policy was acquired in violation of the Utah insurable interest statute, and therefore the Stalsbergs' claims are barred by the doctrine of illegality.

2. The Policy was acquired in violation of the Utah insurable interest statute, and therefore the Stalsbergs are barred by the doctrines of estoppel and unclean hands from seeking the relief they claim in their Complaint.

3. NYL did not issue the Policy, did not enter into any contract or agreement of any kind with the Stalsbergs, and therefore is not in privity with the Stalsbergs. Accordingly, the Stalsbergs have no basis for advancing any claim against NYL.

## COUNTERCLAIM

NYLIAC counterclaims against the Stalsbergs as follows:

1. This action concerns an unlawful scheme under which an insurance policy is purchased with the intent that its proceeds will benefit persons who have absolutely no interest in truly "insuring" the life of the insured person. The intended beneficiaries of the life insurance policy that was issued in this case are one or more financial investors who do not have any pre-existing emotional or economic relationship with the person whose life is being insured. Instead, the intent is for those financial investors to acquire the policy with one interest only: to obtain a financial windfall when the insured person dies.

2. For over a century, state laws throughout this country have prohibited these kinds of transactions. It is the long-established law of Utah and all other states that life insurance policies may not be purchased for the benefit of persons who do not have an "insurable interest." Utah Code Ann. § 31A-21-104(1)(b). An insurable interest is defined as an emotional or economic interest in prolonging the life of the insured person – such as a family member or

business partner. By contrast, a person who has no pre-existing emotional or economic relationship with the insured person does not have an insurable interest. Thus, it is illegal for insurance policies to be purchased for the benefit of a pure financial investor whose only interest is to profit when the insured person dies – and who therefore has only one interest: that the insured person die as soon as possible, so that the investor's profits can be as large as possible, received as quickly as possible.

    3. In this case, the Policy insuring the life of Mr. Ralph Stalsberg was issued to an irrevocable trust established by Mr. Stalsberg. The trust was the named beneficiary of the Policy, and the owner of the policy was the trustee of that trust, Mr. Stalsberg's son. On its face, the transaction looked like an ordinary life insurance transaction. However, it was subsequently discovered that the transaction was executed pursuant to a scheme under which the intent from the very beginning was to transfer the Policy to outside investors who had no insurable interest in the life of the insured. This renders the issuance of the policy contrary to Utah law. Thus, NYLIAC is entitled to rescind the Policy. NYLIAC will not profit from this rescission: it has already sent a check in the full amount of all of the premiums that were paid to NYLIAC under the policy, with interest. Mr. Stalsberg rejected the tender of those premiums and that rescission. Therefore, NYLIAC brings this counterclaim to enforce its rescission of the Policy.

## JURISDICTION

    4. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a) in that Defendant Lonnie R. Stalsberg resides in the State of Utah.

## THE APPLICATION

6. Ralph O. Stalsberg applied for and was issued the Policy by NYLIAC (policy # 56 734 134) on or about January 21, 2005, in the face amount of $3,570,000, insuring the life of Ralph O. Stalsberg, who was 82 years old at the date of issue.

7. According to the application submitted to NYLIAC, the Policy was to be owned by Lonnie R. Stalsberg, in his capacity as trustee of the Stalsberg ILIT ("Trustee Stalsberg"). The Stalsberg ILIT was also designated as the beneficiary of the Policy. Ralph O. Stalsberg signed the application as the applicant, and Trustee Stalsberg signed the application as owner.

8. Ralph O. Stalsberg and Trustee Stalsberg concealed from NYLIAC the fact that the Policy was in fact being purchased for the benefit of or sale to a third party lacking an insurable interest in the life of the insured.

9. By an assignment dated February 11, 2005, the Stalsberg ILIT assigned the Policy as collateral to a third party bank, LaSalle, as security for a non-recourse loan to pay the premiums for the Policy. Upon information and belief, the Stalsbergs never intended to pay any premiums for this Policy using their own funds.

10. The Acceptance of Assignment on the assignment was signed by Krista Lake, purportedly as Senior Vice President of LaSalle.

11. Upon information and belief, Krista Lake is an employee of Coventry.

12. Upon information and belief, at or about the time of the issuance of the Policy, the Stalsberg ILIT executed an irrevocable power of attorney appointing Coventry its attorney-in-fact with full powers to act in its name with respect to the Policy, including the sale of the Policy, all as contemplated by the loan transaction documents.

13.  Upon information and belief, at or about the time of the issuance of the Policy, the insured gave Coventry an irrevocable durable power of attorney appointing Coventry his attorney-in-fact with full powers to act in his name for the purpose, among other things, of authorizing the release of his medical records and maintaining and selling the Policy.

14. By letter dated December 22, 2005, LaSalle submitted a transfer of ownership form and change of beneficiary request to NYLIAC, purportedly transferring ownership of the Policy to LaSalle and purportedly designating LaSalle as the owner and beneficiary of the Policy.

15. The letter further states that LaSalle would be the payor of the Policy.

16. LaSalle has been paying the premiums for the Policy.  On information and belief, the Policy is being held in some type of policy account as security for a loan.

17. LaSalle and Coventry have subsequently taken the position that LaSalle's "ownership" of the Policy is merely the perfection of a security interest that LaSalle has as a lender that financed the payment of the premiums on the Policy.  Upon information and belief, Coventry is acting as a servicing agent for LaSalle's loan to the Stalsbergs.

18. At the time NYLIAC issued the Policy, it believed that the policy transaction was initiated at the behest of the insured for the exclusive benefit of a person or persons having an insurable interest in the life of the insured.

19. It has since come to the attention of NYLIAC that the Policy transaction was initiated at the behest and for the benefit of one or more persons or entities lacking an insurable interest in the life of the insured.

20. The loan documents between LaSalle and the Stalsbergs indicate that the financing provided by LaSalle was on a nonrecourse basis, and was secured solely by the Policy. In addition, those documents indicate that the loan is subject to an effective annual interest rate of at least 15.44%.

21. LaSalle's loan to the Stalsbergs matures on June 21, 2007, shortly after the two year contestability period in the Policy was scheduled to expire.

22. The loan from LaSalle to the Stalsbergs also was used for the acquisition of a $2 million life insurance policy issued by Indianapolis Life Insurance Company, which, unknown to NYLIAC, was issued at or around the same time as the NYLIAC Policy.

23. Upon information and belief, the Stalsbergs never intended to repay the loan to LaSalle and keep the Policy, but instead intended for the loan to be repaid through the transfer of the Policy to LaSalle or through the sale of the Policy to another financial entity with no insurable interest in Ralph Stalsberg.

24. As of the time the Policy was first issued, the economic substance of the transaction was for the Policy's proceeds to be paid to one or more persons who have no insurable interest in Ralph Stalsberg.

25. The Utah insurance statute strictly prohibits the transaction at issue here. It provides that: "A person may not knowingly procure, directly by assignment or otherwise, an interest in the proceeds of an insurance policy unless that person has or expects to have an insurable interest in the subject of the insurance." Utah Code Ann. § 31A-21-104(1)(b). Because the effect and economic substance of the non-recourse, securitized financing arrangement entered into by the Stalsbergs was to convey "an interest in the proceeds of an insurance policy" to a person (LaSalle and any other financing entities involved) who did not have or expect to have an insurable interest in the subject of the insurance (Mr. Ralph Stalsberg's life), that arrangement violated the insurable interest statute.

26. Moreover, in a Bulletin dated July 10, 2006, the Utah Insurance Department (the "Department") declared that life insurance transactions like the transaction involved in this case violate Utah's insurable interest law as set forth in Utah Code Annotated 31A-21-104(1)(b). The Department stated:

> To determine if an insurable interest exists, the department will look at the entire transaction and will not limit its review to only that part of the transaction that relates to applying for the life insurance policy. Regarding the transactions that have been described to us, a third party initiates, arranges the transaction, and ultimately expects to receive the proceeds of the insurance policy. The third party has no insurable interest in the person insured because a lawful and substantial

>interest does not exist in having the life of the insured continue; in fact, there is a substantial interest in not having the life of the person continue.

27. Thus, if the economic substance of the entire transaction in this case is examined, it is clear that the Policy violates Utah's insurable interest law.

28. NYLIAC has tendered a full refund of the premiums paid on the Policy.

29. In a letter dated January 24, 2007, Coventry sent a letter to NYLIAC that rejected that tender on behalf of both Ralph Stalsberg and Lonnie Stalsberg as trustee for the Stalsberg ILIT.

## COUNT I
(Declaratory Judgment and Rescission)

30. NYLIAC realleges the foregoing allegations as though fully set forth herein.

31. An actual controversy exists between NYLIAC on the one hand and Defendants on the other hand, which lies within the jurisdiction of this Court.

32. The Policy lacks an insurable interest and is illegal under Utah law. On this ground alone, NYLIAC is therefore entitled to rescind the Policy, and has properly rescinded the Policy.

33. In addition, an independent basis for rescission exists because Ralph O. Stalsberg and Trustee Stalsberg made false representations in the application as to the true owner and intended beneficiaries of the Policy either intentionally or negligently to induce NYLIAC to issue the Policy. They made such representations with the intent that NYLIAC would rely on the representations that the intended owner and beneficiary of the Policy was the Stalsberg ILIT.

4811-2214-7585

34. NYLIAC reasonably relied on the representations made in the application in approving the application and issuing the Policy.

35. At the time they applied for the Policy, Ralph O. Stalsberg and Trustee Stalsberg had a duty to disclose to NYLIAC material information related to his application, including but not limited to information identifying a legitimate insurable interest.

36. Ralph O. Stalsberg and Trustee Stalsberg knew or should have known that the intended owner and intended beneficiaries of the Policy did not have an insurable interest in the subject of the insurance.

37. Ralph O. Stalsberg, and by virtue of signing the application, Trustee Stalsberg, had a duty to disclose this and other material facts to NYLIAC.

38. In violation of their duty to do so, Ralph O. Stalsberg and Trustee Stalsberg failed to communicate this information to NYLIAC.

39. Had NYLIAC known this information, it would not have issued the Policy to Trustee Stalsberg.

40. Accordingly, NYLIAC has appropriately rescinded the Policy.

41. NYLIAC is entitled to bring this action to enforce its rescission based upon NYLIAC's right to rescind all policies issued in violation of the insurable interest rule set forth in Utah Code Ann. § 31A-21-104(1)(b), and, as an independent basis for rescission, based upon the Stalsberg's negligent or intentional misrepresentations and fraudulent inducements of NYLIAC.

42. Pursuant to 28 U.S.C. § 2201, NYLIAC seeks a declaration by the Court that:

a. NYLIAC appropriately rescinded the Policy based upon the violation of Utah's insurable interest law, Utah Code Ann. § 31A-21-104;

b. NYLIAC was also independently entitled to rescind the Policy based upon intentional or negligent misrepresentations and/or omissions;

c. The Policy is rescinded, or otherwise null and void and of no further consequence;

d. NYLIAC or its successors in interest, are not obligated in any respect to pay benefits to Defendants or any other person under the Policy;

e. Neither Defendants nor anyone else is entitled to benefits under the Policy; and

f. NYLIAC is entitled to equitable relief such as would return NYLIAC to the same position that existed before the issuance of the Policy plus applicable attorney fees and interest as may be provided for by law.

## COUNT II
(Declaratory Judgment and Injunction)

43. NYLIAC realleges the foregoing allegations as though fully set forth herein.

44. In the event that, notwithstanding the foregoing, the Court holds that the remedy of rescission is not available in this case, the Court should nonetheless enter an order declaring that the Policy was issued in violation of Utah's insurable interest statute, and that the interest held by LaSalle and any other financing entities in the Policy is illegal and contrary to Utah Code Ann. § 31A-21-104(1)(b).

45. As an alternative remedy to rescission, the Court should exercise its equitable discretion, in accordance with Utah Code § 31A-21-104(5), to order that, at the time that payment of the Policy is required, the proceeds of the Policy must be paid over to persons having an insurable interest in the life of Mr. Ralph Stalsberg, and further, that the Stalsbergs shall take all steps necessary to ensure that such payment is made in accordance with that order.

WHEREFORE, NYLIAC demands judgment:

A. Declaring that NYLIAC has no liability on the Policy and that the Policy is rescinded or otherwise void and of no consequence; and

B. As an alternative to the remedy set forth in paragraph A, above, declaring that the Stalsbergs must ensure that the proceeds of the Policy must be paid over to persons having an insurable interest in the life of Mr. Ralph Stalsberg;

C. Awarding attorney fees and costs associated with bringing this action as may be provided for by law; and

D. Awarding such other and further relief as the Court deems just and equitable.

DATED this 10th day of May 2007.

    /s/ David N. Kelley_____
Scott M. Petersen
David N. Kelley
FABIAN & CLENDENIN,
A Professional Corporation
Attorneys for NYLIAC

4811-2214-7585

-18-

4811-2214-7585

-18-