ERIK A. CHRISTIANSEN (7372)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 532-1234
Facsimile:  (801) 536-6111
Email Address: echristiansen@parsonsbehle.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RALPH O. STALSBERG, an individual, LONNIE R. STALSBERG, AS TRUSTEE FOR, THE RALPH O. STALSBERG IRREVOCABLE TRUST I dtd. 9/28/2004,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW YORK LIFE INSURANCE COMPANY, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION,<br><br>Defendants. | **MEMORANDUM OF PLAINTIFFS IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM**<br><br>Civil Action No. 2:07-cv-00029-BSJ<br><br>Judge Bruce S. Jenkins |

Plaintiffs Ralph O. Stalsberg, an individual, and Lonnie R. Stalsberg, as trustee for the Ralph O. Stalsberg Irrevocable Trust I dtd. 9/28/2004 (collectively "the Stalsbergs"), respectfully submit this memorandum in support of their motion to dismiss the counterclaim asserted by defendants New York Life Insurance Company and New York Life and Annuity Corporation (collectively "New York  Life") pursuant to Federal Rule of Civil Procedure 12(b)(6).

975158.1

## INTRODUCTION

This case is about premium financed life insurance. "The gist of [premium financed] life insurance is that the insured finances the premiums with a loan … and the balance of the loan is paid out of the death benefit after the insured dies." *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 785 (7th Cir. 2007). Premium financing is "advantageous to wealthy clients because it allows them to prepare for estate tax obligations without incurring large out-of-pocket expenses for annual premiums and without incurring gift taxes." *See Tax Track Sys. Corp. v. New Investor World, Inc.*, 2005 WL 936638, *1 (N.D. Ill. March 24, 2005).

There is nothing unusual about premium financing. For more than a century, courts have recognized the legitimacy of premium financing. *See, e.g., Jones v. New York Life Insurance Company*, 15 Utah 522, 534 (Utah 1897) (holding that a creditor does not become the "owner" of a policy simply because the policyholder finances life insurance premiums with a loan secured by the policy); *see also Tax Track Sys. Corp.,* 478 F.3d at 785 (premium financed life insurance "is not a new idea"). Indeed, premium financing arrangements are expressly recognized by Utah statute:

> "Premium finance agreement" means an agreement by which an insured or prospective insured promises to pay to an insurance premium finance company the amount advanced or to be advanced under the agreement to an insurer or to an insurance producer in payment of premiums on an insurance policy, together with a service charge, an interest charge, or both.

*See* Utah Code Ann. § 31A-21-305(1)(b).

What is particularly incredible about New York Life's counterclaims here is that, if premium financing arrangements are common as a general matter, it is also not uncommon for ***insurance companies*** to offer premium financing themselves. *See, e.g., Perry v. Fidelity Union*

*Life Ins. Co.,* 606 F.2d 468, 470 (5th Cir. 1979) ("In making available premium financing, an insurance company is acting not as an insurer but as a creditor, and the financing activity is purely ancillary to the insurance relationship between the insurance company and the policyholder."); *see also* Utah Code Ann. § 31A-22-420 (regulating loans by insurers for the payment of premiums). New York Life offers similar loans secured by the life insurance policy. (*See* Compl. ¶ 15). While New York Life offers loans based on the cash surrender value of the policy, other lenders are willing to make loans up to market value of the policy – that is, the price at which a third party would be willing to purchase the policy outright, based on the death benefit and cash value of the policy discounted by the life expectancy of the insured and other factors. (*See id*. ¶ 16.)

The only novel aspect of the premium financing arrangement at issue here is that, because of relatively recent developments in the secondary market for life insurance, lenders such as LaSalle Bank, N.A. ("LaSalle") are now willing to make loans based on the full market value of the policy, as opposed to the much-lower surrender value on which insurance companies like New York Life typically base their premium financing arrangements.

The Utah Viatical Settlements Act, Utah Code Ann. § 31A-36-101 *et seq.*, regulates this secondary market and codifies the long-recognized principle that a life insurance policy properly can be sold to a third party. *See* Utah Code Ann. § 31A-36-102; *see also Grigsby v. Russell*, 222 U.S. 149, 156 (1911) ("To deny the right to sell except to persons having [an insurable interest] is to diminish appreciably the value of the contract in the owner's hands.")

Put simply, New York Life's attempted rescission in this case is based on little more than New York Life's fear of competition from premium finance lenders that use market values rather

than surrender values to compete for financing work.  New York Life's counterclaim seeks rescission and declaratory relief relating to an insurance policy insuring the life of Ralph O. Stalsberg (the "Policy").  Ralph Stalsberg's son, Lonnie R. Stalsberg, assisted his father in obtaining the Policy for purposes of placing it in an irrevocable insurance trust (the "Stalsberg Trust") created by Ralph Stalsberg.  (*See* Compl. ¶ 11.)  After the Policy was issued, Lonnie Stalsberg, as trustee for the Stalsberg Trust, obtained a loan from LaSalle to finance the premiums, which loan was secured by the Policy.  (*See id*. ¶¶ 12, 17, 18.)  Based on the premium-finance arrangement, New York Life announced that it would be rescinding the Policy because it was an "investor-owned life insurance policy that lacks an insurable interest." (*See id*. ¶¶ 20, 25.)

     New York Life argues that the Stalsberg Trust "purportedly transferr[ed] ownership of the Policy to LaSalle." (*See* Answer and Countercl. ¶ 14.)  The agreements executed in connection with the premium-finance transaction make clear, however, that the Stalsberg Trust is the owner of the Policy and is under no obligation to sell it.  In connection with the security interest provided to LaSalle, the Stalsberg Trust entered into a Policy Control Agreement, under which LaSalle agreed to act as securities intermediary and maintain a securities account to hold the Policy.  (*See* Compl. ¶¶ 18-19.)  The Policy Control Agreement defines the "Owner" of the Policy as the Stalsberg Trust and further provides that the Stalsberg Trust "does not intend to transfer or surrender to any other person ownership of the Policy or the right to designate the beneficiary thereof prior to the maturity of such borrowings, and the parties hereto acknowledge that the Owner is the party that has the insurable interest in each person whose life is insured by the Policy." (*See id*. ¶ 19.)  As securities intermediary, LaSalle is merely the custodian of the

Policy which permits LaSalle to perfect its security interest pursuant to Article 8 of the Uniform Commercial Code.  (*See id*. ¶ 18.)

New York Life's counterclaim reveals that its actual concern is that the premium-finance arrangement signifies the Stalsbergs' intent to sell the Policy to LaSalle or another financial entity in the future.  (*See* Answer and Countcl. ¶ 12.)  Like many policyowners, the Stalsberg Trust could stop making premium payments and let the Policy lapse.  If the Stalsbergs were to sell the Policy in the secondary market, however, the likelihood that New York Life would be required to pay the death benefit would significantly increase.  (*See* Compl. ¶ 30.)  By seeking rescission, New York Life is attempting to avoid paying the death benefit as promised.

New York Life's counterclaims fail as a matter of law for two reasons.  ***First***, New York Life's first count fails because under Utah law, rescission cannot be based on a lack of insurable interest.  ***Second***, New York Life lacks standing to pursue its second count because New York Life has not suffered an injury in fact and the declaratory relief sought does not redress an alleged injury in fact.  The Stalsbergs therefore are entitled to dismissal of New York Life's counterclaims.

## ARGUMENT

**I. COUNT ONE OF THE COUNTERCLAIM FAILS BECAUSE UTAH LAW DOES NOT PERMIT RESCISSION BASED ON AN ALLEGED LACK OF INSURABLE INTEREST.**

In Count One of its counterclaim, New York Life seeks a declaration of rescission based on the allegation that the Policy was procured (and supposedly later transferred) without a valid insurable interest.  (*See* Answer and Countercl. ¶ 32.)  That allegation is patently false, since the Policy is and at all times has been owned by the Stalsberg Trust, the beneficiaries of which are

Ralph Stalsberg's children, *see* Compl. ¶ 11, who unquestionably have an insurable interest in the life of their father. But even taking the counterclaim allegations as true for purposes of this motion to dismiss, Utah law makes clear that New York Life cannot rescind the Policy based on an alleged lack of insurable interest. Utah law expressly provides that "[a]n insurance policy is not invalid because the policyholder lacks insurable interest." Utah Code Ann. §§ 31A-21-104(5)(a).

The unavailability of rescission is underscored by recent decisions of the Utah Supreme Court. In *Parduhn v. Bennett*, 61 P.3d 982, 986 (Utah 2002), the Court considered a dispute between the named beneficiary of an insurance policy and the wife and children of the deceased insured concerning proceeds of a life insurance policy that was originated when the named beneficiary was a business partner of the insured. After the business partnership dissolved, the insured died, and the named beneficiary and the insured's survivors asserted an entitlement to payment of the death benefit under the policy. *Id.* at 984. The Court ruled in favor of the insured's survivors, holding that the named beneficiary's insurable interest in the life of his former business partner ceased when the partnership dissolved. *Id.* at 986. After further proceedings in the trial court, the named beneficiary again appealed to the Supreme Court asserting that, if his insurable interest terminated upon dissolution of the partnership, then the policy was no longer valid and its death benefit could not be distributed to the insured's survivors. *See Parduhn v. Bennett*, 112 P.3d 495, 498 (Utah 2005). The Court squarely rejected that proposition, explaining:

> Parduhn assumes that our conclusion in *Parduhn I* that he lacked an insurable interest, rendered the insurance policy invalid. Section 31A-21-104, however, explicitly states that "***an insurance policy is not invalid because the policyholder lacks insurable interest***";

> the district court merely distributes the proceeds equitably rather than awarding them to the designee.

*Id.* at 505 (emphasis added) (citations omitted).  *Parduhn* is controlling here.  Like the unsuccessful appellant in *Parduhn*, Count I of New York Life's counterclaim depends on the proposition that, if there is no insurable interest supporting the Policy here, then the Policy is invalid and can be rescinded.  Both the Utah Code and *Parduhn* make clear that that is not the case; at most, if a lack of insurable interest could be shown when the Policy matures at the time of Ralph Stalsberg's death, the statutorily recognized remedy would be for his heirs at law to seek an equitable redistribution of the Policy proceeds, not for New York Life to rescind the policy.  (Indeed, New York Life appears to recognize as much; in Count Two of its counterclaim, New York Life acknowledges the possibility that "the remedy of rescission is not available," and therefore requests the Court to effect an equitable redistribution.  (*See* Answer and Countercl. ¶ 44-45).)  In short, rescission is not an available remedy under Utah law for insurance policies found to lack an insurable interest, and therefore New York Life's rescission claim should be dismissed.

**II.     NEW YORK LIFE LACKS STANDING TO ASSERT COUNT TWO OF ITS COUNTERCLAIM.**

Tacitly acknowledging that rescission cannot be based on lack of insurable interest, New York Life's second count requests that the Court should equitably redistribute the life insurance proceeds to Ralph Stalsberg's heirs and "should . . . enter an order declaring that the Policy was issued in violation of Utah's insurable interest statute." (*See* Answer and Countercl. ¶ 44-45.)  For two independent reasons, New York Life lacks standing to pursue Count Two.

*First*, New York Life lacks any cognizable injury to support a claim for equitable redistribution of the life insurance proceeds. Under its equitable redistribution claim, New York Life concedes that it would be required to pay the insurance proceeds. Because the amount of the life insurance proceeds to be paid are the same whether those proceeds are distributed to Ralph Stalsberg's heirs or to another beneficiary, New York Life's economic position remains the same.

To establish standing, New York Life "must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 598 (1992) (finding that wildlife organizations lacked injury in fact because they failed to show that their members were deprived of opportunity to observe threatened or endangered species).

In *Heard v. Bonneville Billing & Collections, Inc.*, the debtor-plaintiff claimed that the attorneys fees the debtor paid to defendant-collection company were being illegally distributed between the collection company and its attorneys. 1998 U.S. Dist. LEXIS 23035, *8-9 (D. Utah 1998). Debtor-plaintiff's claim did not relate to the propriety of the attorneys fees she paid to the collection company, but to the later distribution of those fees. *Id.* at *9. The Court held that "[b]ecause plaintiff has suffered no concrete, particularized injury from defendants' distribution of attorneys' fees, she lacks standing to bring a claim based on [the collection company's] alleged fee splitting practice." *Id.*[1] So too here. When New York Life pays the death benefit at the time of Ralph Stalsberg's death, New York Life has no particularized injury from how those

---

[1] *See also Mulder v. Lundberg,* 154 Fed. Appx. 52, 54 (10th Cir. 2005) (holding that by surrendering their title in real property, the debtors lacked standing to enjoin nonjudicial foreclosure because "the sale, transfer, or conveyance of the properties would not cause any 'injury in fact'" to the debtors); *Michelson v. Enrich Int'l, Inc.*, 6 Fed. Appx. 712, 718-719 (10th Cir. 2001) (holding that plaintiff lacked standing because he had no "personal stake" in claim for breach of distribution agreement when he had assigned income from distributorship to third party).

insurance proceeds are distributed. It should not matter to New York Life to whom the insurance proceeds are paid; New York Life's request for equitable redistribution to Ralph Stalsberg's heirs reveals that New York Life's real intention is to prevent any future sale of the Policy to a third party, thus decreasing the likelihood that it will have to pay a death benefit. *See supra* at 4.

**Second**, New York Life's request for declaratory relief fails the redressability requirement for standing under Article III. To establish standing, "there must be redressability – a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-104 (1998) (citations omitted) (finding that association failed to meet redressability standard because relief sought would not compensate association for losses in connection with company's failure to file environmental reports). In *Wyoming Sawmills, Inc. v. United States Forest Service*, a timber company claimed that the Forest Service's Historical Preservation Plan prevented the company from buying timber. 383 F.3d 1241, 1248-49 (10th Cir. 2004). The Tenth Circuit explained that even if the Historical Preservation Plan were set aside, the Forest Service would be under no obligation to sell timber to the company. *Id.* Accordingly, the court ruled that the timber company lacked standing because a declaration that the Historical Preservation Plan was constitutionally invalid would not redress the alleged injury. *Id.*; *see also Opala v. Watt*, 454 F.3d 1154, 1159-60 (10th Cir. 2006) (declaration that rule governing Chief Justice rotation was unconstitutional would not redress injury of plaintiff Oklahoma Supreme Court justice, i.e., reinstating his position as Vice-Chief Justice).

As in these and other cases, the declaratory relief sought by New York Life does not redress an alleged injury in fact. Because Utah law does not permit rescission based on a lack of insurable interest, *see* Utah Code Ann. §§ 31A-21-104(5)(a), a declaration that the Policy

violates the insurable interest statute would provide nothing for New York Life. Instead, the declaration would serve only as an advisory opinion, which the standing doctrine is designed to prevent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 598 (1992) ("The purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties.")

## CONCLUSION

For the foregoing reasons, the Stalsberg plaintiffs respectfully request that New York Life's counterclaims be dismissed, in their entirety, with prejudice.

DATED this 30th day of May, 2007.

                                            Respectfully submitted,

                                            /s/ Erik A. Christiansen
                                            Erik A. Christiansen
                                            PARSONS BEHLE & LATIMER

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

> David N. Kelley
> dkelley@fabianlaw.com; sjudd@fabianlaw.com
>
> Scott M. Petersen
> spetersen@fabianlaw.com; sjudd@fabianlaw.com

and I hereby certify that I have mailed the document by United States mail, first-class postage prepaid, to the following non-CM/ECF participants:

> (No manual recipients)

/s/ Carola M. Groos